UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IN THE MATTER OF THE ARBITRATION
BETWEEN FLUOR MARINE PROPULSION, LLC,

                        Petitioner,

                                                                            1:19-CV-1605 (GTS)
v.                                                               1:19-CV-1612 (GTS)

PROFESSIONAL SECURITY EMPLOYEES
ASSOCIATION, LOCAL NO. 1,

                        Respondent.
_____

APPEARANCES:                                        OF COUNSEL:

JACKSON LEWIS, P.C.                      VINCENT E. POLSINELLI, ESQ.
  Counsel for Petitioner
677 Broadway, 9th Floor
Albany, NY 12207

ZAZZALI FAGELLA NOWAK KLEIBAUM &    ROBERT FAGELLA, ESQ.
FRIEDMAN
  Counsel for Respondent
570 Broad Street, Suite 1402
Newark, NJ 07102

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in the two above-captioned related actions filed by Fluor Marine Propulsion, LLC ("Petitioner") against Professional Security Employees Association, Local No. 1 ("Respondent"), are Petitioner's motions to vacate, modify, or correct the Arbitration Awards rendered on September 25, 2019, by arbitrator Roger E. Maher ("Arbitrator") regarding the terminations of Michael Nesbitt and James Mannetti ("grievants").

(Dkt. No. 1 of Case No. 19-CV-1605; Dkt. No. 1 of Case No. 19-CV-1612.)  For the reasons set forth below, Petitioner's motions are denied, and the Arbitration Awards are confirmed.

## I.    RELEVANT BACKGROUND

### A.    Relevant Factual History

Petitioners filed both of these related actions on December 23, 2019.  (Dkt. No. 1 of Case No. 19-CV-1605; Dkt. No. 1 of Case No. 19-CV-1615.)  After obtaining permission from the Court to file memoranda of law and supporting papers, Petitioner filed its memorandum of law in the earlier-filed action on February 7, 2020.  (Dkt. No. 5 of Case No. 19-CV-1605.)  On February 13, 2020, Respondent filed its Answer to the petition along with counterclaims in the earlier-filed action.  (Dkt. No. 7 of Case No. 19-CV-1605.)  On March 3, 2020, Petitioner filed its Answer to Respondent's counterclaims in the earlier-filed action.  (Dkt. No. 9 of Case No. 19-CV-1605.)  On March 6, 2020, Respondent filed its response in opposition to Petitioner's motion in both actions.  (Dkt. No. 10 of Case No. 19-CV-1605; Dkt. No. 6 of Case. No. 19-CV-1615.)  On March 16, 2020, Petitioner filed its reply memorandum of law in the earlier-filed action.  (Dkt. No. 12 of Case No. 19-CV-1605.)

### B.    Arbitration Awards

#### 1.    Award Pertaining to Michael Nesbitt (Case No. 19-CV-1605)

In this arbitration, the parties stipulated to the following two issues for decision: (1) whether the Company discharged the grievant for just cause, and, if not, what the remedy should be; and (2) whether Respondent discriminated against Grievant Nesbitt in violation of Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("NRLA") or the collective bargaining agreement ("CBA") by terminating his employment, and, if so, what the remedy should be.

(Dkt. No. 1, Attach. 1, at 3 of Case No. 19-CV-1605.)  The Arbitrator made the following two findings: (1) the Company had not established just cause for Grievant Nesbitt's termination, but it had established just cause for a three-day disciplinary suspension; and (2) the union failed to establish that Grievant Nesbitt's protected activity was a motivating factor in his termination or that Respondent discriminated against him in any way in violation of the NLRA or the CBA by terminating his employment.  (*Id.* at 13, 23.)  Based on this finding, the Arbitrator ordered that Grievant Nesbitt "will be reinstated to his former position with full back pay and benefits, and with the full retention of his seniority, minus interim earnings and his pay for the three-day suspension."  (*Id.*)  The Arbitrator then stated,

> As further remedy, I remind this Employer that it is party to an Agreement providing for 'final and binding arbitration' and that any use of its Human Reliability Program ("HRP") to contravene this award's reinstatement order would be in defiance of this award and that Agreement, and would caution further that it may very well also be its own independent 8(a)(2) and 8(a)(5) violation of the NLRA, as well as its own independent violation of the parties' Agreement.  Because the risk may be real that the Company may use the HRP to avoid, evade, or otherwise delay an implementation of this decision, this Award is accompanied by a requirement that interest is added to the amount due and at the federal judgment rate.

(*Id.* at 13-14, 23-24.)  In providing this remedy, the Arbitrator specifically rejected Respondent's contention that "its HRP is outside the scope of any arbitral award."  (*Id.* at 22.)

### 2. Award Pertaining to James Mannetti (Case No. 19-CV-1612)

The stipulated issues and relevant findings in the second Award are essentially the same as in the first Award, with the exception that, in the second Award, the Arbitrator found that the Company had established sufficient just cause for imposing a *one-month* disciplinary suspension

3

due to the nature of Grievant Mannetti's specific conduct.  (Dkt. No. 1, Attach. 1 of Case No. 19-CV-1612.)

For purposes of simplicity (which focuses on the Arbitrator's findings related to the HRP), the Court will refer to both of the Arbitration Awards as "the Award," given that the HRP-related findings challenged by both motions are identical.

### C.      Parties' Arguments on Petitioner's Motions

#### 1.      Petitioner's Memorandum of Law

Generally, in its memorandum of law, Petitioner makes two arguments.  (Dkt. No. 5 of Case No. 19-CV-1605 [Pet.'s Mem. of Law].)  First, Petitioner argues that the Arbitrator exceeded his authority by rendering a finding on Petitioner's obligations under the HRP because the HRP is not subject to the CBA, and the CBA does not allow the Arbitrator to add to, detract from, or alter any provision of the CBA or to impose any duty on a party to take (or refrain from taking) any action that is in violation of existing or future law, rule, regulation, or directive issued by a government department or agency.  (*Id.* at 18-19.)  Petitioner further argues that the HRP is not part of the CBA because it is a non-negotiable government policy that is not subject to collective bargaining or arbitration, and thus the part of the Award that requires Petitioner to refrain from taking any action against the grievants through HRP proceedings both alters the CBA and adds a restriction into the CBA that does not exist.  (*Id.* at 19-21.)

Second, Petitioner argues that, because the Award related to the HRP was on a matter not submitted by the parties, the Arbitrator did not have the authority to issue that part of the Award. (*Id.* at 21-23.)  More specifically, Petitioner argues that the only two issues that were submitted to the Arbitrator were (1) whether the grievants were discharged for just cause (and if so, what

4

the remedy should be), and (2) whether Petitioner discriminated against the grievants in violation of the NLRA or the CBA (and if so, what the remedy should be). (*Id.*) Petitioner further argues that the parties had no intention to submit any issue related to the HRP to the Arbitrator, and that, because the United States Department of Energy ("DOE") has exclusive jurisdiction over all security matters, neither the parties nor the Arbitrator have any authority to usurp the DOE's power to make decisions on those security matters. (*Id.*)

### 2. Respondent's Opposition Memoranda of Law

Generally, in its opposition memorandum of law, Respondents argue that the Award should be affirmed in its entirety because it involved a reasonable interpretation of the CBA and an appropriate extension of the reinstatement order. (Dkt. No. 10 of Case No. 19-CV-1605 [Respondent's Opp'n Mem. of Law].) More specifically, Respondent argues that the Arbitrator did not exceed his authority or go beyond the scope of the CBA in making a finding about the HRP, but rather was appropriately ensuring that his award was not invalidated or circumvented in violation of the CBA's provision for final and binding arbitration. (*Id.* at 14-16.) Respondent further argues that the Arbitrator's ruling does not prevent Petitioner from using the HRP to assess security issues on unrelated matters, but rather merely prevents Petitioner from using it to thwart the arbitration. (*Id.* at 15-16.) Respondent explains that allowing Petitioner to use the HRP under these circumstances would do just that because (a) the same officials who made the decision to terminate the grievants would be on any HRP committee, (b) any HRP decision would necessarily be based on the same evidence and information already assessed by the Arbitrator given that (i) grievants had met all security requirements before their termination, and (ii) they have not worked since their termination so there are no new actions or developments

5

that could be considered, and (c) there is no appeal from an HRP determination, so grievants would have no recourse if an HRP proceeding undermined the arbitration. (*Id.* at 17-18.) Respondent additionally argues that arbitrators have powers beyond those that are explicitly stated if the powers further the parties' intent, and that it is in furtherance of the parties' intent to allow the Arbitrator to preclude HRP review of issues already decided in binding arbitration where the HRP could be used to circumvent that arbitration given that the CBA provides for arbitration of disciplinary matters. (*Id.* at 19-22.) Finally, Respondent argues that Petitioner's actions in terminating only these two employees and then seeking HRP proceedings only after the Award was rendered against it on those terminations shows that the Arbitrator's caution was warranted. (*Id.* at 22-23.)

### 3. Petitioner's Reply Memorandum of Law

Generally, in its reply memorandum of law, Petitioner makes three arguments. (Dkt. No. 12 of Case No. 19-CV-1605 [Pet.'s Reply Mem. of Law].) First, Petitioner argues that, contrary to Respondent's characterization, grievants would not be terminated in the event of an adverse HRP determination, but rather would be moved to a comparable position appropriate for their security level. (*Id.* at 6.) Petitioner further argues that (a) an HRP decision is based on different factors and analysis than those relevant to an employment action and thus, any HRP finding would not be duplicative of the findings made in the arbitrations, (b) any HRP proceedings would be conducted by different personnel than the personnel who imposed the initial employment discipline, (c) Respondent is incorrect that HRP proceedings were not conducted for any of the other employees who were found to have accessed restricted information, and (d) the only reason that the grievants have not yet been reinstated to their positions (and the only reason

that the HRP proceedings have not yet happened) is that the grievants need to be approved for a government security clearance by the DOE before those proceedings can occur.  (*Id.* at 6-10.)

Second, Petitioner argues that the Arbitrator could not properly consider issues related to the HRP because it was not stipulated as an issue to be arbitrated, and the CBA permits an arbitrator to consider only the dispute placed before him; thus, the Arbitrator's authority ended at determining that there was no just cause for the termination and finding reinstatement to be the appropriate remedy, and he should not have proceeded to issue injunctive relief related to the HRP.  (*Id.* at 11-12.)

Third, Petitioner argues that the Arbitrator exceeded his authority because the HRP is not part of the CBA and does not draw its essence from the CBA.  (*Id.* at 13-14.)  Petitioner argues that prohibiting HRP proceedings as to the grievants would provide the grievants with special treatment and allow them to evade one of the explicit conditions of their employment.  (*Id.*)  Finally, Petitioner argues that the CBA cannot be interpreted as imposing an obligation to refrain from any action that would violate a directive or regulation issued by the DOE, which would include the need to conduct HRP reviews.  (*Id.*)

## II.     LEGAL STANDARD GOVERNING REVIEW OF ARBITRATION AWARD

"The review of arbitration awards is generally governed by the FAA."  *In re Arbitration Before New York Stock Exch., Inc.*, 04-CV-0488, 2004 WL 2072460, at *5 (S.D.N.Y. Sept. 8, 2004) (citing *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 201 [2d Cir.1998], *cert. denied*, 526 U.S. 1034 [1999]).  "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Willemijn Houdstermaatschappij, BV v. Standard Microsystems*

*Corp.*, 103 F.3d 9, 12 (2d Cir.1997). "Pursuant to 9 U.S.C. § 9, any party to an arbitration may apply to a federal court for an order confirming the award resulting from the arbitration, and the court 'must grant . . . an order [confirming the arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'" *In re Arbitration Before New York Stock Exch., Inc.*, 2004 WL 2072460, at *5 (quoting 9 U.S.C. § 9) (other citations omitted).

"The Court of Appeals for the Second Circuit 'adhere[s] firmly to the proposition . . . that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.'" *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J*, 954 F.2d 794, 797 [2d Cir.1992]) (other citations omitted).

> The FAA provides that an arbitration award may be vacated: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* at *5-6 (quoting 9 U.S.C. § 10[a]).

As to the fourth of these bases, the Second Circuit has indicated clearly that, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (internal quotation marks omitted). "[A]n arbitrator may exceed her authority by, first considering issues beyond those the parties have submitted for her

8

consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Jock*, 646 F.3d at 122-23.

"The burden of establishing the existence of one of the grounds for vacatur rests with the party seeking that form of statutory relief." *Id*. at *6 (citing *Willemijn Houdstermaatschappij*, 103 F.3d at 12) (other citations omitted).

"In addition to the statutory grounds stated in the FAA, the Second Circuit has recognized that an arbitration award may be vacated 'if it is in manifest disregard of the law.'" *Id*. (quoting *Halligan*, 148 F.3d at 202) (other citations omitted). "Manifest disregard clearly means more than error or misunderstanding with respect to the law." *Id*. (citations omitted). "To vacate an arbitration award on the grounds of manifest disregard of the law, 'a reviewing court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *Id*. (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir. 2000) (other citations omitted). "Where there is a 'colorable justification' or a 'rational basis' for an award, it is not in 'manifest disregard of the law.'" *Id*. (citations omitted). "Review of arbitration awards for manifest disregard is 'severely limited.'" *Id*. (citations omitted).

### III. ANALYSIS

After careful consideration, the Court answers the question of whether the Arbitrator exceeded his authority in the negative for the reasons stated in Respondent's opposition memorandum of law. (Dkt. No. 10, at 14-24 [Respondent's Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

"In determining whether arbitrators have exceeded their power, the court must 'determine (i) first whether the arbitrator acted within the scope of his authority, and (ii) second whether the award has drawn its essence from the agreement or is merely an example of the arbitrator's own brand of justice.'" *Maney v. United Sanitation, Inc.*, 99-CV-8595, 2000 WL 1191235, at *3 (S.D.N.Y. Aug. 21, 2000).

Respondent chiefly argues that the Arbitrator's decision related to the HRP process did not exceed his authority because the Arbitrator had an implicit authority under the CBA (and thus his finding drew its essence from the CBA) to ensure "that his arbitration award of reinstatement was not totally eviscerated and invalidated by an end run alternative method of termination by an HRP Committee comprised of similar Company officials who made the initial termination decisions, reviewing the same issues already decided in arbitration." (Dkt. No. 10, at 15-16 [Resp.'s Opp'n Mem. of Law].) In particular, Respondent argues that "[t]o allow the Company to stonewall the uncontested determination that these grievants were not discharged for just cause, by permitting another arm of the Company to discharge them anyway, would emasculate the arbitrator's authority and effectively render the collective bargaining agreement meaningless." (*Id.* at 22.) To the contrary, Petitioner argues that the HRP is specifically not included in the CBA and could not be brought within the scope of arbitration because no such issue was submitted to the Arbitrator.

As an initial matter, the Court finds that the Arbitrator's ruling on the narrow HRP issue in the Award here sufficiently draws its essence from the CBA. As both parties note, Article XIII, Section 5 of the CBA states that "[t]he award of an arbitrator so selected upon any grievance subject to arbitration as herein provided shall be final and binding upon all parties to

10

this Agreement provided that no arbitrator shall have any authority or jurisdiction to add to, detract from, or in any way alter the provisions of this Agreement." (Dkt. No. 1, Attach. 2, at 28 [CBA].) The Arbitrator specifically referenced this "final and binding" clause when explaining the rationale behind his finding related to the HRP, stating that "any use of its HRP to contravene this award's reinstatement order would be in defiance of this award and the Agreement." (Dkt. No. 1, Attach. 1, at 22.) Thus, the Arbitrator's finding was based on an interpretation of the CBA itself in that the Arbitrator interpreted the "final and binding" nature of the arbitration to allow him to implement additional remedies that would ensure that Petitioner would not circumvent the Award's requirement for reinstatement of the grievants to their former positions. The Arbitrator's inclusion of a remedy encompassing the HRP therefore drew its essence from the CBA and the Court will not overrule that interpretation. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) ("[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction that was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); *Maney*, 2000 WL 1191235, at *3 ("In order to satisfy the requirement that the arbitration award 'draws its essence' from the collective bargaining agreement, the arbitrator 'need only explicate his reasoning under the contract in terms that offer even a barely colorable justification of the outcome reached.'").

The Court additionally rejects Petitioner's contention that the HRP issue discussed in the Award was not submitted by the parties for arbitration for many of the same reasons discussed above. Specifically, although the parties did not explicitly submit an issue about whether

11

Petitioner could proceed with HRP proceedings against the grievants, the issues that were explicitly submitted included the issue of what the remedy should be if the grievants were found to have been discharged without just cause. (Dkt. No. 1, Attach. 1, at 3.) Pursuant to this submitted issue, the Arbitrator fashioned a primary remedy that required reinstatement of the grievants to their former positions. The additional HRP remedy (which merely prevents Petitioner from using the HRP to circumvent that primary remedy) is so inextricably related to the primary remedy (and, as discussed above, drew its essence from the CBA's "final and binding" clause) that the Court cannot say that its inclusion goes so beyond the scope of the submitted issue that the Arbitrator exceeded his authority and ruled on an issue that was wholly outside of the issues submitted by the parties for arbitration. Simply put, the parties specifically authorized the Arbitrator to fashion a remedy if he found that the grievants had been dismissed without just cause, and the Arbitrator's narrow discussion of the HRP is sufficiently related to that remedy.

Having found that the issue actually decided was sufficiently submitted to the Arbitrator pursuant to this Decision and Order's highly deferential review, the Court turns next to whether the arbitration agreement, the CBA, or the law categorically prohibited the Arbitrator from reaching that issue. *See Jock*, 646 F.3d at 124 ("Under our precedent it is not for the district court to decide whether the arbitrator 'got it right' when the question has been properly submitted to the arbitrator and neither the law nor the agreement categorically bar her from deciding that issue."). Petitioner argues that, in this case, both the CBA and the law removes any issue related to the HRP from arbitration.

12

As an initial matter, the Court finds that the Arbitrator's remedy related to the HRP is narrow and prohibits Petitioner only from using the HRP in a way that contravenes the Award's order to reinstate the grievants to their former positions. (Dkt. No. 1, Attach. 1, at 23-24 of Case No. 19-CV-1065; Dkt. No. 1, Attach. 1, at 27-28 of Case No. 19-CV-1612.) Nothing in the Award exempts the grievants from the HRP program or prevents Petitioner from conducting HRP aspects such as drug tests, medical and psychological assessments, supervisory reviews, or requiring DOE security clearance. Nothing in the Award would prevent Petitioner from bringing HRP proceedings against the grievants in the future if different concerns arose. Nothing in the Award would even prevent Petitioner from conducting an HRP assessment based on matters or considerations separate and apart from those that form the basis of the Award (although Petitioners have not made any indication that such additional independent bases might exist). Indeed, the Award does not preclude Petitioner from taking any action against the grievants under the HRP related to the issues decided on arbitration other than preventing the reinstatement of the grievants to their former positions. Rather, all the Award does is prevent Petitioner from using the purported security concerns related to the grievants' actions underlying the arbitration as a basis for conducting HRP proceedings against the grievants and using those actions as a basis for removing the grievants from their reinstated positions in a way that would be inconsistent with the findings on arbitration.

Notably, in reaching his conclusions, the Arbitrator noted that the facts presented showed that (a) none of the materials accessed by the grievants were designated or marked as classified or secret and none involved any nuclear security issue, (b) it was Petitioner itself that made the relevant documents (albeit inadvertently) accessible to the grievants and others, (c) the

13

documents were not marked in a way that would give the grievants or others reason to believe that the access to these documents was a mistake, (d) it was common knowledge among employees and superiors that employees had access to these documents for approximately 18 months, and (e) Petitioner did not conduct any investigation to determine who had mistakenly made these documents available and did not take any action against any responsible management officials for the release of those documents. (Dkt. No. 1, Attach. 1, at 14-15 of Case No. 19-CV-1605; Dkt. No. 1, Attach. 1, at 17-19 of Case No. 19-CV-1612.) The Arbitrator additionally rejected Petitioner's argument that the grievants should have known that they were not permitted to view these documents pursuant to the "need to know" doctrine. (Dkt. No. 1, Attach. 1, at 15-18 of Case No. 19-CV-1605; Dkt. No. 1, Attach. 1, at 19-21 of Case No. 19-CV-1612.) Because Petitioner does not contest that the Arbitrator had authority to consider and issue an award based on these issues, it would defeat the purpose of the final and binding arbitration agreed to by the parties if Petitioners were permitted to reconsider any of these issues anew under the guise of "security concerns" during HRP proceedings. Additionally, Petitioner has not even indicated what security concerns are implicated by the grievants' conduct (which, as the Arbitrator found, did not involve documents related to classified information or information related to a nuclear security issue) or how the issues to be decided in the HRP proceedings would in fact be different.

Petitioner also argues that requiring it to accept the Arbitrator's findings and conclusions in any HRP proceedings assessing the grievants' conduct is essentially allowing the Arbitrator to usurp the power of the DOE for setting policies related to security and improperly reading the HRP into the CBA. In making this argument, Petitioner relies on various provisions of the CBA that afford it the exclusive right to manage its business (including to maintain safety, efficiency

14

and order in its plants and operations), that indicate that the Arbitrator shall not have the authority to add to, subtract from or alter the CBA, and that nothing in the CBA "shall be deemed to impose upon either party the obligation to take any action, or refrain from taking any action, in violation of any existing or future law, rule, regulations, or directive issued by a government department or agency."  (Dkt. No. 1, at 3-4 of Case No. 19-CV-1612.)  Petitioner also relies on language from 10 C.F.R. § 706.40 indicating that "DOE retains absolute and final authority [over all matters of security], and neither the security rules nor their administration are matters for collective bargaining."  (Dkt. No. 1, at 5 of Case No. 19-CV-1612.)

      However, such argument misses the mark.  In particular, the Court finds that the Award does not purport to add the HRP to the CBA, nor does it purport to take authority from DOE over any matter of security.  As already noted, the Arbitrator's remedy related to the HRP is extremely narrow; it merely ensures that, should Petitioner conduct HRP proceedings against the grievants related to the conduct at issue in the arbitration, Petitioner is bound by those findings and must apply them in the context of any such proceedings rather than make findings anew on issues that have already been decided in arbitration.  Additionally, the Arbitrator's finding that he was permitted to make a determination on this limited HRP issue (which implicitly includes a finding that his consideration of that issue does not run afoul of the provisions in the CBA regarding an inability to add to the CBA or to require performance that is contrary to DOE directives) is an interpretation of the CBA that is at least colorable, and that, as a result, may not be replaced by the Court's own interpretation.  Again, the standard of review in this matter is whether the Arbitrator committed a serious error in interpreting the CBA and the arbitration agreement or whether he decided matters that were clearly prohibited by law.  The Court finds

that the Arbitrator's interpretation of the CBA as allowing him to narrowly apply his findings to any subsequent HRP proceeding in order to maintain the "final and binding" nature of his award neither reads the HRP into the CBA nor impermissibly or clearly reaches a matter that is placed beyond the scope of arbitration by law.

For all of the above reasons, the Court finds that Petitioner's motions to vacate, modify, or correct the Arbitration Awards are denied.

**ACCORDINGLY,** it is

**ORDERED** that Petitioner's motions to vacate, modify, or correct the Arbitration Awards (Dkt. No. 1 of Case No. 19-CV-1605; Dkt. No. 1 of Case No. 19-CV-1612) are **DENIED**; and it is further

**ORDERED** that the Arbitration Awards (Dkt. No. 1, Attach. 1 of Case No. 19-CV-1605; Dkt. No. 1, Attach. 1 of Case No. 19-CV-1612) are **CONFIRMED**; and it is further

**ORDERED** that the Clerk of the Court shall issue a Judgment in conformance with the Arbitration Awards.

Dated: October 22, 2020
       Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge